No. 2600.—SARAH E. DOYAL, wife, etc. *v.* HENRY R. DOYAL and others.

Though the personal obligation of universal legatee, to pay a particular legacy is joint, their hypothecary obligation is solidary.

The legal mortgage in favor of particular legatees on the property of the succession, withheld by the universal legatees, must be recorded as against third persons, 22 An. 391, but it need not be recorded as against the universal legatees themselves. They are not "third persons," but "contracting parties," by *quasi* contract, resulting from their acceptance of a succession or universal legacy, subject to the payment of a particular legacy. C. C. (1825) 2314–15–16.

This legal mortgage in favor of particular legatees is a right distinct from the *privilege* resulting from the separation of patrimony; and therefore the article 3242 of the Code of 1825, which requires the *privilege* to be recorded within three months from the opening of the succession, does not apply to this mortgage, which may exist without record as long as the obligation to which it is accessory.

APPEAL from the District Court, parish of Ascension. *Beauvais*, J. *Johnson & Denis*, for plaintiff and appellee. *Elmore & King*, for defendants and appellants.

HOWE, J.   The plaintiff instituted this action against the defendants, the universal legatees of Henry Doyal, deceased, to recover a particular legacy of $10,000 bequeathed to her by the will of the latter.   The court below gave judgement in her favor against the four defendants, respectively, each for the virile portion, $2500, with mortgage for the whole amount of $10,000 upon the immovables of the succession bequeathed to the defendants and withheld by them.

The defendants appealed.   They admit the portion of the decree which gives the personal judgment to be correct, but complain of that part which recognizes the mortgage for the whole claim of plaintiff.

13

The appellee, in her answer, claims an amendment of the judgment in her favor, so that she may recover from one of the defendants,. Henry R. Doyal, the full amount of the legacy, on the ground that, by the terms of the will, he is bound to discharge the same in full.

We do not think that, by the terms of the will, Henry R. Doyal is bound for any more than his virile share of one-fourth. The evident intention of the whole instrument was to make a perfect equality between the four children, defendants herein, and to have this particular legacy discharged out of the first crop of the Mount Houmas plantation, to be sure, if practicable ; but otherwise, and under other circumstances, like those which have since occurred, by the succession at large. We do not think, therefore, that the court erred in giving the personal judgment against H. R. Doyal for one-fourth only of the claim, being an amount "in proportion tŏ the part that falls to him in the succession. C. C. [1626].

Nor do we think the court erred in decreeing the mortgage for the whole amount of $10,000 upon the immovables of the succession withheld by the defendants. The mortgage is established by the article already cited, which declares that the heirs of the testator, or the debtors of a legacy, shall be personally bound to discharge it, each in proportion to the part that falls to him in the succession; and that they shall be bound by mortgage *for the whole* to the amount of the value of the immovable property of the succession withheld by them. It is matter of legal history that this mortgage was established in the Roman law by the Code of Justinian, Law 1, *Communia de Legatis*, etc.; that the question whether the hypothecary obligation could be any more extensive than the personal, was a subject of dispute among jurists in France, Bacquet and Renusson maintaining the affirmative, and Potheir the negative; that the Code Napoleon adopted the views of the former in its article 1017; and that the Legislature of Louisiana have done the same in the similar article above quoted. Delvincourt,. vol. 2, p. 364, n. 3.

But it is contended by the appellants that the mortgage was not recorded at the time of the rendition of the judgment (May, 1863); that it had never in any way been recorded within three months from the opening of the succession, and that it had therefore been lost, and they refer to the case of Ogle *v.* King, 22 An. 391, and to art. [3242] of the Civil Code. The case of Ogle *v.* King involved a contest between a particular legatee and a third person, a conventional mortgage of the heirs, and we held that the legal mortgage, established by article [1626], must be recorded as against this third person. But the defendants in this case are not third persons. They are the contracting parties themselves, by *quasi* contract, resulting from their acceptance of a succession or universal legacy, subject to the payment

of a particular legacy, and the mortgage, as to them, required no recording. C. C. [3314–15–16]. The article [3242], which is mainly relied on, declares that creditors and legatees who demand a partition of the patrimony of the deceased, preserve their privilege as against the heirs or representatives of the deceased on the immovables of the succession only by recording the evidences of their claims against the succession within three months after it is opened, and that before the expiration of this time no mortgage can be enforced [established] against the property, nor any alienation be made by the heirs or representatives of the deceased to the injury of the creditors of the succession. It is urged that the mortgage of plaintiff has been lost because it was not inscribed within the three months.

But we apprehend that there is a wide difference in purpose and effect between the legal mortgage of article [1626] and the privilege of article [3242]. We have not been referred to any decisions of this court upon the question, but the French commentators on the corresponding articles, 1017 and 2111, C. N., recognize the distinction.

Duranton says: "Legatees have, according to article 1017, a mortgage on the immovables of a succession; and, *besides*, a privilege in virtue of article 2111. This mortgage is entirely independent of the effect of the separation of patrimony." Vol. 19, 289.

Demolombe, commenting on article 1017, declares that it provides three actions—personal, real and hypothecary—and adds: "It will be recollected that legatees have, besides, a fourth security in the right which belongs to them to demand a separation of patrimony." Proceeding to notice the historical origin of this legal mortgage, he discusses its status in the French Code, combats the idea that it no longer exists, and that it is supplanted or impaired by the privilege mentioned in article 2111, and concludes: "The legal mortgage exists, then, still under our Code for the benefit of legatees at the same time with the right which belongs to them to demand a separation of patrimony; * * * each has its peculiar advantages." Vol. 21, pp. 266, 273.

Again, under the head of successions, vol. 17, No. 217, the same writer says: "Very different opinions have been expressed on the simultaneous existence in our Code of the legal mortgage of legatees in virtue of article 1017 and of the privilege of separation of patrimony in virtue of articles 2111 and 2113. One opinion, and a prominent one, has pretended that this mortgage is not a right distinct from that of the separation of patrimony, and that the hypothecary security of article 1017 has been swallowed up entirely in the theory of the separation of patrimony of articles 2111 and 2113. * * * * But we believe that the legal mortgage of legatees has lost nothing, and the separation of patrimony has gained nothing, for the simple reason that there has been no fusion between them, and that they have

not ceased to form two distinct rights." Comp. Merlin, Rep. *v.* Separation, etc.; *Troplong des Hypoth.*, vol. 2, No. 432, *bis;* Toullier, vol. 7, No. 240.

"The legatees have at once, in our view, a legal mortgage in virtue of article 1017, and the privilege of separation of patrimony in virtue of articles 2111 and 2113. Each of these rights is sometimes more and sometimes less advantageous than the other. Thus, the separation of patrimony has over the legal mortgage this double advantage, that it assures a right of preference, not only on the immovables, but also on the movables; and that it secures a right of preference on the immovables with retroactive effect when the inscription is made within six [in Louisiana, three] months from the opening of the succession; while the legal mortgage, on the other hand, has this double advantage over the separation of patrimony, that it can be exercised even when the legatee has accepted the heir as a debtor, and that it enjoys the prerogative of indivisibility."

We conclude that the action of separation of patrimony and the resulting privilege established by observing the formalities of article [3242], intended, as they were, to give the creditor or legatee of the deceased a right of preference on his property as against the creditors or vendees of the heirs, have no reference to the case at bar, and that the judgment ought not to be disturbed.

Judgment affirmed.